# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:19-cv-24223-JLK

EDUARDO VIOTES,

     Plaintiff,

v.

ANDREW SAUL, Commissioner of
Social Security Administration,

     Defendant.

_____/

## REPORT AND RECOMMENDATION[1] ON
## CROSS MOTIONS FOR SUMMARY JUDGMENT

     This matter is before the Court on the parties' Cross Motions for Summary Judgment. Plaintiff Eduardo Viotes ("Plaintiff" or "Viotes") filed his Motion for Summary Judgment on March 31, 2020 ("Plaintiff's Motion"). ECF No. [21]. Along with his Motion, Plaintiff filed a Statement of Material Facts. ECF No. [22]. Defendant, the Commissioner of Social Security ("Defendant" or "Commissioner"), filed his Motion for Summary Judgment with Supporting Memorandum of Law and Opposition to Plaintiff's Motion on April 29, 2020 ("Defendant's Motion"). ECF Nos. [23], [24].[2] Along with his Motion, Defendant also filed a Statement of Material Facts, ECF No. [25]. Plaintiff filed a Reply on December 31, 2020. ECF No. [27]. The Court must now determine whether the decision reached by the Administrative Law Judge ("ALJ") is supported by substantial evidence and whether the correct legal standards were applied. After

---

[1] This matter was referred to the undersigned for all pre-trial, non-dispositive matters, and for a Report and Recommendation on any dispositive matters. ECF No. [4].

[2] Although the Docket reflects that Defendant filed a separate Response to Plaintiff's Motion for Summary Judgment, ECF No. [24], it is the same document as Defendant's Motion, ECF No. [23].

a review of the parties' motions, the record, and all relevant authorities, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion be **GRANTED in part and DENIED in part**, Defendant's Motion be **DENIED**, and this matter be **REMANDED** for the following reasons.

## I.   BACKGROUND

On April 19, 2016, Viotes filed an application for a period of disability and Disability Insurance Benefits alleging disability beginning on June 1, 2014.  R. at 78, 226–29.[3]  Viotes was fifty-two years old at the time his application was filed.  *Id*. at 226.  The Social Security Administration ("SSA") initially denied the claim on August 4, 2016 and denied it again upon reconsideration on September 8, 2016.  *Id*. at 127, 133.  Viotes requested a hearing on September 15, 2016.  *Id*. at 140–42.  On July 11, 2018, Viotes, who was represented by counsel, testified at the hearing with the aid of an interpreter and amended his alleged disability onset date to July 1, 2016.  *Id*. at 52, 75.  Lorin Lovely, a vocational expert ("Lovely" or the "VE"), also testified at the hearing.  *Id.* at 72.  On October 30, 2018, the ALJ issued her decision denying Viotes's application. *Id*. at 26–38.  On September 9, 2019 Viotes's request for review of the ALJ's decision was denied by the Appeals Council.  *Id.* at 6–13.  Having exhausted all available administrative remedies, and pursuant to 42 U.S.C. § 405(g), Viotes filed the instant action.  ECF No. [1].

### A.  The SSA Hearing

By the time of the hearing, Viotes was fifty-six years old.  R. at 55.  According to Viotes's testimony, his highest level of education was completing the ninth grade.  *Id.*  From 2005 to 2015, Viotes worked as a technician for Ruby Tools, a Spanish company, and then continued working

---

[3] References herein to "R. at __" are to the Social Security transcript, the pertinent parts of which can be found at ECF No. [13].  All the page numbers to the Social Security transcript referenced herein refer to those assigned by the electronic docketing system as found on the top right corner of the page.

with Ruby Tools as an independent contractor until July 2017. *Id.* at 55–60, 72, 234. In that job, Viotes was tasked with fixing machines that cut tiles. *Id.* at 59. Viotes testified that while working, he would sometimes have to stand and lift tile-cutting machines that weighed up to eighty pounds. *Id.* at 61. When asked whether he understood English, Viotes testified that he only understood small words such as "yes" and "no." *Id.* at 56–57.

As to the physical ailments that underlie his disability claim, Viotes testified that his worst physical problems are his hands and back. *Id.* at 62. In addition, Viotes testified that as a result of developing back problems that resulted in a herniated disc, he underwent two lumbar-related surgeries in 2007. *Id.* at 62, 64. Viotes stated that since 2009 he has been taking Percocet and Tramadol for pain which resulted in gastritis that causes him to vomit and lose weight. *Id.* at 62–64. Viotes testified he suffers from issues with his right-hand tendons and nerves, and from arthritis in both hands. *Id.* at 65. Because of his pain, Viotes states he can only lift one to two pounds with his right hand and only a little more with his dominant left hand. *Id.* Viotes stated he fractured his left hand in 2017, which led to him being unable to continue working in addition to his other disabilities. *Id.* Viotes also complained of discomfort in his left shoulder. *Id.* at 64. Viotes states that he underwent a shoulder-related surgery in 2005 and that he still experiences discomfort and a jabbing sensation in his left shoulder. *Id.*

Regarding his mental condition, Viotes testified that that he suffers from depression as a result of his time as a political prisoner in Cuba. *Id.* at 69. Although he claimed his mental condition improved while working in the United States, Viotes testified his depression returned and became greater after experiencing back problems beginning in 2005. *Id.* at 69–70. Viotes testified that he felt restless as a result of the questioning during the hearing and that he suffers from anxiety. *Id.* at 70 –71.

At the hearing, the VE categorized Viotes's past work history, using the Dictionary of Occupational Titles ("DOT") as that of a mechanical technician, described in DOT 600.260-024,[4] usually performed at a "medium" exertion level, but was performed by Viotes at the "heavy" level, with a Specific Vocational Preparation ("SVP") rating of seven. *Id.* at 72. The ALJ asked the VE whether a hypothetical individual with Viotes's age, education, background, and past work history, could perform Viotes's past work as a mechanical technician if the hypothetical individual were limited to (1) routine tasks that can be learned in thirty days or less, and involving occasional interaction with supervisors, workers, and the public, and (2) occasionally climbing ramps and stairs, never ladders, ropes, or scaffolds; occasionally stooping, kneeling, crouching, crawling; frequently balancing; frequently reaching, including overhead reaching; frequently handling, fingering, and feeling; and occasional exposure to hazards. *Id.* The VE answered that such a hypothetical individual would not be able to perform Viotes's past work, but such individual would be able to work as: (1) a linen room attendant, as described in DOT 222.387-030, performed at a medium exertion level, with an SVP of two, (2) an industrial cleaner, as described in DOT 381.687-018, at a medium exertion level, with an SVP of two, and (3) a laundry labeler, as described in DOT 361.687-018, at a medium exertion level, with an SVP of two. *Id.* at 74.

The ALJ then asked the VE whether a second hypothetical individual similar to the first but limited to an exertion level of "light" would have any positions. *Id.* The VE stated the individual could work as: (1) a towel folder, as described in DOT 209.587-010, at a light exertion level, with an SVP of two, (2) a housekeeper, as described in DOT 323.687-014, at a light exertion level, with an SVP of two, and (3) a garment sorter, as described in DOT 222.687-014, at a light

---

[4] The VE cited to an incorrect DOT number as that number does not exist in the DOT. The correct DOT number is 600.280-010, which includes mechanical technician as an alternative title and describes work similar to the work Plaintiff reported performing.

exertion level, with an SVP of two.  *Id.*  The ALJ also inquired if Viotes would have any transferable skills to a sedentary level of work, to which the VE stated there was no transferability of skills.  *Id.*  Plaintiff's counsel did not have any follow-up questions for the VE.  *Id.* at 74–75.

### B.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  Plaintiff bears the burden of proving that he is disabled, and he is responsible for producing evidence to support his claim.  *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The ALJ is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled.  *See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).  At step one, the ALJ must determine whether the claimant is currently unemployed; at step two, the ALJ must determine whether the claimant suffers from "severe"[5] impairment(s); at step three, the ALJ must determine whether the claimant suffers from an impairment that meets, or medically equals, a listed impairment found under 20 C.F.R. pt. 404, subpt. P, app. 1; at step four, the ALJ must determine whether the claimant is unable to return to

---

[5] An impairment is considered "severe" if it significantly limits a person's physical or mental ability to do basic work activities for a continuous period of at least twelve months.  20 C.F.R. §§ 404.1509, 404.1520a(d)(1), 404.1522(a)–(b).

his past relevant work given his Residual Functional Capacity ("RFC");[6] and if not, at step five, the ALJ must determine whether the claimant is unable to perform other work as it exists in the national economy, given his age, education, RFC, and work experience. *Id.* While "[a]n affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability . . . [a] negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (citing 20 C.F.R. § 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985)).

### C. The ALJ's Decision

On October 30, 2018, the ALJ concluded that Viotes was not disabled within the meaning of the Social Security Act. R. at 27. In reaching her decision, the ALJ applied the five-step sequential evaluation process that must be used when considering these types of claims. *Id.* at 27–38; *see* 20 C.F.R. § 416.920(a); *Frame*, 596 F. App'x at 910. At step one, the ALJ determined that Viotes had engaged in substantial activity since July 1, 2016, the alleged onset date. R. at 29. Specifically, the ALJ noted that Viotes worked after the alleged disability onset date, as indicated by his earnings report which reflected his self-employment income in the amount of $10,164.00 in 2017. *Id.* The ALJ's decision explained that, due to the inconsistencies between Viotes's testimony at the hearing and his tax returns regarding his employment records, the ALJ requested that Viotes submit an explanation, such as bank statements, to confirm whether his 2017 earnings

---

[6] The RFC is defined as the "most [a claimant] can still do despite [a claimant's physical and mental] limitations." 20 C.F.R § 416.945(a).

were a result of substantial gainful activity.  *Id.* at 29.  Instead of submitting bank statements to explain the discrepancy, Viotes submitted a 2014 letter from his former employer.  *Id.*  This letter failed to confirm he did not engage in substantial gainful activity from January 2017 through July 2017.  *Id.*  However, the ALJ continued the sequential evaluation of Viotes because the ALJ noted that there was a continuous twelve-month period, specifically from August 2017 through October 2018, where Viotes had not engaged in substantial gainful activity.  *Id.*

At step two, the ALJ determined that Viotes suffers from ten "severe" impairments: (1) spine disorders; (2) other and unspecified arthropathies; (3) diabetes mellitus; (4) disorders of muscle, ligament, and fascia; (5) peripheral neuropathy; (6) affective disorders; (7) anxiety disorders; (8) lumbar post-laminectomy syndrome; (9) post-traumatic stress disorder; and (10) bipolar disorder. *Id.*  The ALJ found that these severe impairments significantly limit Viotes's ability to perform basic work activities.  *Id.*

At step three, the ALJ considered the listing requirements and determined that Plaintiff did not meet or equal the severity of any of the relevant listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.[7]  *Id.* at 29–31.  After considering the entire record, the ALJ next determined that Viotes has the RFC to perform "medium work," as defined in 20 C.F.R. 404.1567(c), except he could never climb ladders, ropes, or scaffolds.  *Id.* at 31.  In addition, the ALJ determined that Viotes can "occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl," and can also "frequently reach in all directions, including overhead" and "frequently handle objects, finger, or

---

[7] The Listing of Impairments is a predetermined set of major body system impairments that are considered severe enough to prevent an individual from engaging in any gainful activity, thereby rendering an individual who meets a listed impairment disabled. Such an individual will be considered disabled regardless of age, education, and work experience.  An individual's impairment is medically equivalent to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment.  *See* 20 C.F.R. §§ 416.925; 416.920(d); 416.926.

feel." *Id.*  However, the ALJ stated that Viotes is mentally limited to simple, routine tasks that can be learned in thirty days or less and should have no more than occasional interaction with supervisors, coworkers, and the public.  *Id.*

At step four, the ALJ determined that Viotes is unable to perform his past relevant work as a mechanical technician because that work exceeded his RFC.  *Id.* at 36–37.

At step five, the ALJ considered Viotes's age, education, work experience, and residual functional capacity, and determined that there are jobs that exist in significant numbers in the national economy that he can perform.  *Id.* at 37.  Based on the testimony of the VE, and considering Viotes's age, educational level, and functional capacity, the ALJ determined that Viotes could make a successful adjustment to other work that exists in significant numbers and could work as a linen room attendant, industrial cleaner, or laundry laborer.  *Id.* at 37–38.  As such, the ALJ concluded that a finding of "not disabled" was appropriate.  *Id.*

## II.    STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

In reviewing the ALJ's decision, a court is not to "reweigh the evidence" or "decide the facts anew."  *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the

Court must defer to the ALJ's decision. *See Crawford v. Comm'r, Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Comm'r, Soc. Sec. Admin.*, 808 F.3d 818, 822 (11th Cir. 2015). Even if the Court finds that the evidence preponderates against Commissioner's decision, the Court must affirm Commissioner's decision if the decision is supported by substantial evidence. *See Ellison*, 355 F.3d at 1275. In this respect, "the ALJ has a basic obligation to develop a full and fair record," given that a hearing before an ALJ is not an adversarial proceeding. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). The Court also reviews the ALJ's decision to determine whether the correct legal standards were applied. *Id.* However, no presumption of validity attaches to the ALJ's conclusions of law. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## III.     ANALYSIS

Plaintiff argues that the ALJ committed four errors. First, Plaintiff argues that the ALJ erred by failing to articulate the weight that the ALJ accorded to the opinions of Plaintiff's treating sources. ECF No. [21] at 6. Specifically, Plaintiff argues that the opinions from Plaintiff's various medical providers constituted "medical opinions" as defined by the SSA regulations, which require the ALJ to articulate the weight these medical opinions were accorded. *Id.* Second, Plaintiff argues that the ALJ failed to properly consider whether Plaintiff's inability to communicate in English precluded the work listed in the ALJ's step-five finding. *Id.* at 10. Plaintiff contends that the work listed by the ALJ all have language requirements that exceed Plaintiff's capacity to communicate in English. *Id.* Third, Plaintiff argues that, in determining Plaintiff's RFC, the ALJ failed to consider all the limitations relating to the use of Plaintiff's arms and hands. *Id.* at 13. Fourth, Plaintiff argues that the ALJ failed to properly assess Plaintiff's alleged symptoms and limitations. *Id.* at 19. The undersigned considers each argument in turn.

**A.  The ALJ's Failure to Evaluate All The Medical Opinions Warrants Remand.**

Plaintiff argues that the ALJ failed to articulate the weight she accorded the treating source opinions from Drs. Hassun, Valdivia, Lustgarten, and Tejeiro, and various other providers contained in the records from Citrus Health Network, Community Medical Group, and New Life Medical Institute.  *Id.*  Specifically, Plaintiff argues that these sources provided "medicals opinions" as defined by 20 CFR § 416.927(a)(1), and, therefore, the ALJ was required to specifically evaluate them and articulate the weight given to each opinion.  *Id.* at 6–7.  Notably, Defendant stated that Plaintiff's Motion did not cite to any specific opinions in the record.  ECF No. [23] at 5.  As a result, the undersigned ordered that Plaintiff submit a brief reply referencing the specific opinions that Plaintiff contends are medical opinions.  *See* ECF No. [26].  Plaintiff's Reply provided the Record citations that Plaintiff argues should be considered medical opinions ("Plaintiff's Reply").  ECF No. [27].

Defendant contends that the ALJ was not required to specifically articulate the weight given to the medical sources listed by Plaintiff because those opinions were merely medical records as opposed to "medical opinions."  ECF No. [23] at 4–5.  Specifically, Defendant argues that the medical source opinions provided by Plaintiff do not reflect judgments about the nature and severity of Plaintiff's impairments, as is necessary for them to be classified as "medical opinions" under the Code of Federal Regulations.  *Id.* at 5.  Moreover, Defendant argues that even if some of the medical source opinions could be classified as medical opinions, Plaintiff failed to show that any such opinions contradicted the ALJ's assessment of Plaintiff's RFC and, therefore, the ALJ's failure amounts to harmless error.  *Id.* at 6.

Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and

prognosis.  20 C.F.R. § 404.1527(a)(1).  Procedurally, an ALJ is "required to state with particularity the weight he [gives] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  Absent such a statement, a reviewing court cannot determine whether the ultimate decision is supported by substantial evidence.  *See Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985) (citation omitted).  Absent good cause, an ALJ must give a treating physician's opinion substantial or considerable weight.  20 C.F.R. §§ 404.1527(c), 416.927(c).  However, an ALJ is "not required to state what weight he assigned to medical records that did not qualify as medical opinions." *Romero v. Comm'r of Soc. Sec.*, 752 F. App'x 906, 908 (11th Cir. 2018).  Under 20 C.F.R. § 416.927—the relevant regulation for evaluating opinion evidence for claims filed before March 27, 2017—a "medical opinion" is defined as a "statement[ ] from acceptable medical sources that reflect[s] judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(1).[8]  However, the failure to assign weight to a medical opinion is harmless error if the opinion is consistent with the ALJ's findings.  *Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 812 (11th Cir. 2017) (failing to assign weight to certain medical evidence was harmless because the ALJ considered these records and the ALJ's opinion was consistent with the records).

Notably, Plaintiff's argument urges the Court to have a much more expansive view than the applicable standard requires.  ECF No. [21] at 7.  Clearly, the ALJ is not required to weigh the opinions of every medical source; and, instead, the ALJ is only required to weigh those medical

---

[8] Plaintiff initially filed his claim for disability on June 1, 2014.  R. at 78, 226–29.  Thereafter, Plaintiff amended his disability onset date to July 1, 2016.  *Id.* at 52, 75.  Therefore, because Plaintiff filed his case before the March 27, 2017 amendment, 20 C.F.R. § 416.927(a)(1) is the relevant regulation for evaluating opinion evidence in Plaintiff's case.

source opinions that constitute "medical opinions," as defined by 20 C.F.R. § 416.927(a)(1).  *See Sharfarz*, 825 F.2d at 279.  The undersigned will review the medical notes of each of the doctors and medical providers noted in Plaintiff's Reply in order to determine whether they constitute medical opinions for which the ALJ was required to consider and assign a given weight.

**1.   The ALJ Failed To Weigh The Medical Opinion of Dr. Tejeiro.**

Dr. Tejeiro's medical notes constitute medical opinions as defined by the regulations.  As noted above, a "medical opinion" is defined as a "statement[ ] from acceptable medical sources that reflect[s] judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(1).  Dr. Tejeiro's treatment notes are medical opinions because they diagnose Plaintiff's impairments and include an assessment of Plaintiff's physical limitations.  Specifically, Dr. Tejeiro's notes revealed that, upon physical examination, Plaintiff had degenerative osteoarthritis with changes of the wrist joints, metacarpal phalangeal joints, and interphalangeal joints; stiffness, hypothenar and thenar atrophy; and intrinsic wasting and diminished sensation over the tips of the thumbs.  ECF No. [13-1] at 372–76.  Moreover, Dr. Tejeiro's notes also state that Plaintiff has diminished sensation over the tips of the thumb, index, and fourth fingers in both hands; diminished grip strength and sensation; and trigger fingers.  *Id.* Given that the notes included a diagnosis and limitations to Plaintiff's physical abilities, the notes constitute a medical opinion as defined by the regulation.

Defendant argues that any error committed by the ALJ in failing to assess the medical opinions was harmless error.  ECF No.  [23] at 6.  The undersigned finds that this argument, as it pertains to Dr. Tejeiro's medical opinions, is unpersuasive.  As set forth by the Eleventh Circuit, an ALJ's failure to weigh the medical opinions of record is harmless error if the medical opinions

are consistent with the ALJ's ultimate determination. *See Sarli v. Berryhill*, 817 Fed. App'x. 916, 919 (11th Cir. 2020) (holding that the ALJ's failure to weigh the opinion of a psychological consultant was harmless where the opinion was consistent with the claimant's RFC and such failure would not have affected the ultimate outcome of the ALJ's decision). Here, Dr. Tejeiro's medical opinions are not consistent with the ALJ's RFC determination. Specifically, Dr. Tejeiro's medical opinionstated that Plaintiff had loss of grip strength, trigger fingers, and diminished sensation in his fingertips, and yet, , the ALJ concluded that Plaintiff could "frequently handle objects, finger, or feel." R. at 31. Indeed, the limitations provided by Dr. Tejeiro contradict the ALJ's RFC finding, and, without a proper evaluation by the ALJ, the undersigned cannot conclude that substantial evidence supports the ALJ's findings. *Hudson*, 755 F.2d at 786. Therefore, the undersigned finds that remand is appropriate so that the ALJ can evaluate and weigh the medical opinions of Dr. Tejeiro.

### 2.   The ALJ Failed To Weigh The Medical Opinion of Dr. Lustgarten.

As an initial matter, the undersigned finds that Dr. Lustgarten was Plaintiff's treating physician. Indeed, Dr. Lustgarten had an ongoing treating relationship with Plaintiff, seeing Plaintiff multiple times between 2012 to 2014. R. at 380–448. Moreover, the Court also finds that Dr. Lustgarten's treatment notes constituted medical opinions as defined by the regulations. Dr. Lustgarten's treatment notes indicate that Plaintiff had lumbar post-laminectomy and legitimate disabling chronic pain which required opioid therapy into the foreseeable future. *Id.* at 380–81.

However, the undersigned finds that the ALJ's error as to this medical opinion is harmless. A medical opinion does not contradict an ALJ's decision where the opinion "does not indicate that [p]laintiff was more limited than the ALJ determined in his analysis." *Perez Guerrero v. Colvin*, 14-23841-CIV, 2016 WL 4807953, at *5 (S.D. Fla. Mar. 23, 2016) (internal quotation omitted);

*see also Wright v. Barnhart*, 153 Fed. App'x. 678, 684 (11th Cir. 2005) (stating that it was harmless error because none of the doctors' findings negated the ALJ's conclusion that the claimant could perform a full range of sedentary work). The medical opinions by Dr. Lustgarten did not offer any diagnosis that the ALJ did not already consider in his analysis, nor did it provide any limitation to his physical abilities. As mentioned above, Dr. Lustgarten's opinion was in regard to Plaintiff's lower back impairments, which the ALJ fully considered when determining Plaintiff's RFC. Indeed, the ALJ found that one of Plaintiff's severe impairments was lumbar post-laminectomy syndrome. R. at 29. Although Dr. Lustgarten's medical opinions indicate that Plaintiff had chronic lower back pain, Dr. Lustgarten's interim history report noted that Plaintiff was on a stable regimen of oxycodone and acetaminophen, which "allow[ed] him to do his activities of daily living and work full-time with minimal limitation." *Id*. at 380. Because these medical opinions did not offer any additional limitations that the ALJ had not already considered in making her decision, the undersigned finds that remand as to this issue is inappropriate.

### 3. Dr. Hassun's Notes Do Not Constitute A Medical Opinion.

As to Dr. Hassun's treatment notes, which are handwritten and difficult to decipher, the undersigned finds that they are not medical opinions as defined by the regulations. Dr. Hassun's notes state that Plaintiff required transforaminal epidural injections as a medically necessary treatment to Plaintiff's disc disease. *Id.* at 543–45. However, Dr. Hassun, who is an anesthesiologist, does not appear to diagnose Plaintiff's condition nor does he provide any limitations or prognosis. *See* 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Instead, Dr. Hassun's treatment notes are more fairly described as memorializations of the epidural treatment he administered, not as medical opinions as defined by the relevant regulations. As such, Dr. Hassun's treatment notes do not constitute medical opinions, and the ALJ did not err in failing to

specifically weigh Dr. Hassun's treatment notes.  Moreover, even if they were viewed as medical opinions, the failure to review them cannot be error as they provide no limitations that would otherwise effect or undermine the ALJ's findings.

### 4. The ALJ Properly Evaluated Dr. Valdivia's Medical Opinions.

Contrary to Plaintiff's contention, the ALJ did evaluate the opinions of Dr. Valdivia. Although the ALJ Opinion refers to Dr. Jose Valdivia as "Dr. Jose Valonia," R. at 35–36, the ALJ cites to Dr. Jose Valdivia's opinion and there is no Dr. Valonia that appears in the medical records, making it clear that the ALJ's error is simply typographical.  Indeed, the ALJ considered Dr. Valdivia's medical opinion that Plaintiff was unable to do any kind of work due to poor concentration and anxiety.  *Id.* at 35–36, 935.  However, the ALJ accorded Dr. Valdivia's opinion little weight finding that the opinion was not well supported by Plaintiff's contemporaneous treatment notes.  *Id.* at 35.  Specifically, the ALJ based his finding on the fact that Plaintiff's treatment notes, prior to and after Dr. Valdivia's opinion, documented normal findings.  *Id.*  The ALJ cited to several treatment notes, which were taken after Dr. Valdivia provided his medical opinion, indicating that Plaintiff was fully oriented, communicated with normal speech, had intact thought processes, had unremarkable thought content, had fair insight and judgment, and had no apparent concentration or attention deficits.  *Id.*; *see* ECF No. [13-1] at 547–54.  The undersigned finds that the ALJ's decision to afford Dr. Valdivia's medical opinions little weight (a finding that Plaintiff does not contest) is supported by substantial evidence.

### 5. Citrus Health Network Inc., New Life Medical Institute, and Community Medical Group Did Not Provide Medical Opinions For Which The ALJ Was Required To Assign A Given Weight.

Plaintiff's contention that the treatment notes provided by Citrus Health Network Inc., Community Medical Group, and New Life Medical Institute constitute medical opinions is also

unpersuasive.  Specifically, the treatment notes provided by Citrus Health Network Inc., were not medical opinions that the ALJ was required to weigh.  Again, as noted above, "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).  Although a physician's treatment notes can constitute medical opinions if they meet the above criteria, the notes here fail to meet that standard.  *See Winschel*, 631 F.3d at 1179 (finding that treatment notes constituted medical opinions because they contained the information provided in 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1)).

Specifically, the notes refer to Claimant's diagnosis, PTSD and major depressive disorder, and his symptoms, but provide no information as to prognosis, what he can and cannot do, or any restrictions he faces as a result of his PTSD and Major Depressive disorder.  ECF No. [13-1] at 498–503, 529–32.  Specifically, although all the notes mention some of his symptoms, the purpose of the notes appears to be to document his response to his prescribed medication and to document further treatment plans.  *Id.*  Indeed, the treatment plans document Plaintiff's visits and provide a summary of the services received, describe the treatment progress, indicate patient goals and objectives, specify changes in treatment or diagnosis, track the services performed, and document medications prescribed.  *Id.*  They do not, however, provide medical source statements reflecting judgments about the nature and severity of Plaintiff's impairments, including Plaintiff's symptoms, diagnosis and prognosis, what Plaintiff can still do despite impairments, and Plaintiff's physical or mental restrictions.  *See* 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).  As such, the treatment plans are not medical opinions.

For the same reasons noted above, the undersigned finds the notes provided by Community Medical Group and New Life Medical Institute do not constitute medical opinions as defined by the regulations. The notes provided by Community Medical Group merely set forth Plaintiff's standard medication and treatment plans, without specifically identifying Plaintiff's diagnosis or providing any sort of prognosis. ECF No. [13-1] at 339–59. Indeed, although the treatment notes by one of the medical providers in Community Medical Group indicate that the diagnosis and prognosis were discussed with Plaintiff, the notes do not specifically state what was discussed. *Id*. at 348, 351, 354. Similarly, the notes provided by New Life Medical Institute document Plaintiff's objective medical findings, without providing any judgments about the nature and severity of Plaintiff's impairments. R. at 525, 581, 583, 594, 808–10, 937, 941, 943, 988–89, 993-995, 997, 999–1000, 1002–03; [13-1] at 558–573 Indeed, the notes refer to Plaintiff's medical impairments, including carpel tunnel syndrome and left shoulder abnormalities, R. at 810, 937, but they do not provide any other judgments as to Plaintiff's ultimate diagnosis or what he can or cannot do despite his impairments. R. at 525, 581, 583, 594, 808–10, 937, 941, 943, 988–89, 993-995, 997, 999–1000, 1002–03; [13-1] at 558–573. As such, the notes provided by these three medical providers do not constitute medical opinions and, therefore, the ALJ was not required to specifically refer to them in the decision.

### B. The RFC Was Not Supported By Substantial Evidence.

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence in the record because the ALJ "fail[ed] to properly account for all the reaching, handling, fingering, and feeling limitations arising from [Plaintiff's] shoulder and hand impairments." ECF No. [21] at 13. Plaintiff contends that if the ALJ properly assessed the severity of Plaintiff's shoulder and hand impairments, "the limitations arising therefrom would surely preclude the lifting and carry

of up to 50 pounds, as well as the frequent handling and reaching, that are required of each and every one of the jobs she named in her step-five finding." *Id.*

Defendant argues that the ALJ's RFC determination was supported by substantial evidence.  ECF No. [23] at 11.  Specifically, Defendant contends that Plaintiff's limitations regarding his shoulders, arms, and hands were considered based on the ALJ's finding that Plaintiff had severe impairments, including "other and unspecified arthropathies and disorders of muscle, ligament, and fascia." *Id.* at 12.  Moreover, Defendant argues that "even if Plaintiff had some additional limitations relating to his arms and hands, that evidence would not alter the substantial evidence supporting the ALJ's assessment of Plaintiff's RFC." *Id.*

"The residual functional capacity is an "assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Raymond v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 766, 776 (11th Cir. 2019) (internal quotation marks omitted) (quoting *Lewis*, 125 F.3d at 1440).  "The ALJ makes this assessment by considering the claimant's physical, mental, and other abilities affected by the impairments." *Id.* (citing 20 C.F.R. § 404.1545(b)–(d)).  The ALJ also assesses a claimant's residual functional capacity based on all of the relevant medical and other evidence.  20 C.F.R. § 404.1545(a)(3).  However, administrative law judges "are not required to refer to every single piece of evidence presented to them in their decisions." *Williams v. Comm'r, Soc. Sec. Admin.*, 805 Fed. App'x 692, 695 (11th Cir. 2020) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).  "[T]he task of determining a claimant's [RFC]…is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010).

Here, after finding that Plaintiff had multiple severe impairments, including other and unspecified arthropathies and disorders of muscle, ligament, and fascia, and considering the entire

record, the ALJ determined that Plaintiff "has the [RFC] to perform medium work as defined by 20 CFR 404.1567(c)" with certain limitations. R. at 29, 31. Among those limitations, the ALJ found that Plaintiff could never climb ladders, ropes, or scaffolds; and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. *Id.* at 31. However, the ALJ noted that Plaintiff could frequently reach in all directions, including overhead, and could frequently handle objects, finger, or feel. *Id.* As previously noted, the ALJ failed to consider the medical opinion of Dr. Tejeiro who found that Plaintiff had limitations in his hands. Because that was not properly considered or weighed, the Court cannot determine that the ALJ's finding was supported by substantial evidence. *See Hudson*, 755 F.2d at 786. As such, the undersigned finds remand appropriate as to this issue.

### C. The ALJ's Step Five Analysis Was Proper.

Plaintiff argues that, at step five, the ALJ failed to account for Plaintiff's inability to speak English. ECF No. [21] at 10. First, Plaintiff argues that the VE, in testifying about the jobs Plaintiff can still perform in the national economy, did not consider the fact that Plaintiff could not speak English. *Id.* Specifically, Plaintiff argues that the ALJ's hypothetical questions to the VE did not require the VE to consider Plaintiff's inability to speak English. *Id.* Second, Plaintiff argues that the VE's testimony identifying the jobs in the national economy available to Plaintiff amounts to an apparent conflict with the description of those jobs in the DOT. *Id.* at 12. Specifically, Plaintiff contends that the jobs listed by the VE require Plaintiff to speak English pursuant to the DOT's job descriptions. *Id.*

Defendant responds by contending that the ALJ properly used the VE's testimony to identify other jobs in the national economy that Plaintiff could perform. ECF No. [23] at 8–9. Defendant argues that the VE, in testifying about the jobs available to Plaintiff in the national

economy, considered Plaintiff's inability to speak English.  *Id.*  Specifically, Defendant contends that Plaintiff's inability to communicate in English falls under the vocational factor of education and, therefore, by asking the VE to assume a hypothetical individual with Plaintiff's age, education, and work experience, the VE's testimony was in consideration of Plaintiff's inability to speak English.  *Id.*  Moreover, Defendant argues that even if the ALJ's hypothetical did not specifically require the VE to consider Plaintiff's inability to speak English, the VE would have nonetheless considered Plaintiff's limitation because the VE was present at the ALJ hearing and "was aware that Plaintiff could not communicate in English…and would have heard Plaintiff's testimony that he had a limited ability to understand English and could not read English."  *Id.* at 9.  Finally, Defendant argues that there is no apparent conflict with the testimony of the VE and the DOT because the DOT's description of the jobs listed by the VE do not require the ability to communicate in English.  *Id.* at 10.

Under the Social Security Act's regulations, if the ALJ finds that a claimant is unable to perform his past relevant work, the ALJ must show the existence of other jobs in the national economy that the claimant can perform.  *Wilson*, 284 F.3d at 1227.  This finding must be supported by substantial evidence.  *Id.*  In making this determination, the ALJ may consider both the information contained in the DOT and testimony from a vocational expert.  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1360 (11th Cir. 2018).  An ALJ has an "affirmative duty to identify apparent conflicts" between the VE and the DOT, and once a conflict is identified, the ALJ is required "to offer a reasonable explanation for the discrepancy, and detail in his decision how he has resolved the conflict."  *Id*.  The Circuit Court also defined an apparent conflict as "a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony."  *Id*. at 1365.  In other words, "a conflict is apparent if a reasonable comparison of the DOT with the

VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.* Here, after determining that Plaintiff could not return to his past relevant work as a mechanical technician, the ALJ concluded that Plaintiff could perform other available work in the national economy. R. at 37. The ALJ's decision was primarily based on the VE's testimony that Plaintiff could work as a linen room attendant, industrial cleaner, or laundry laborer. *Id.* at 38.

Plaintiff's argument that the VE did not take into consideration his inability to communicate in English is unpersuasive. The VE's testimony was based on the ALJ's hypothetical questions that specifically required the VE to consider the claimant's age, education, and work experience. *Id.* at 73. As Defendant correctly point out, Plaintiff's inability to speak English is a limitation that falls under the vocational factor of education. *See* 20 C.F.R. § 404.1564(b)(5)[9]; *see also* ECF No. [23] at 9. As such, the ALJ's hypothetical questions posed to the VE specifically required the VE to consider Plaintiff's inability to communicate in English before testifying as to the possible jobs that Plaintiff could still perform in the national economy.

In addition, Plaintiff's argument that the VE's testimony amounts to an apparent conflict with the DOT is also unpersuasive. The VE testified that Plaintiff can work as (1) a linen room attendant, as described in DOT 222.387-030, (2) an industrial cleaner, as described in DOT 381.687-018, and (3) a laundry labeler, as described in DOT 361.687-018. R. at 74. Pursuant to the DOT, a linen room attendant and an industrial cleaner have a language level of two, which requires "a passive vocabulary of 5,000-6,000 words" and a reading "rate of 190-215 words per minute." *See* DOT § 222.387-030, 1991 WL 672098; *see also* DOT § 381.687-018, 1991 WL

---

[9] Although the Code of Federal Regulations Section 404.1564 was amended on April 27, 2020 by deleting C.F.R. § 404.1564(b)(5), Plaintiff's hearing took place on June 11, 2018. As such, the language in § 404.1564(b)(5) applies to Plaintiff.

673258.  A laundry labeler has a language level of one, which requires recognizing the meaning of 2,500 words, and "read [at] a rate of 95-120 words.  *See* DOT § 31.687-018, 1991 WL 672992. The Eleventh Circuit has held that jobs with a language level of two do "not specifically require that the claimant's language be English."  *Rivera-Cruzada v. Comm'r of Soc. Sec.*, 741 F. App'x 737, 739–40 (11th Cir. 2018).  Therefore, the VE's testimony that Plaintiff can work as a linen room attendant, industrial cleaner, or laundry labeler without being able to speak English does not, as Plaintiff suggests, present an apparent conflict with the DOT.  As such, the VE's testimony properly considered Plaintiff's limitations, the VE's testimony was not inconsistent with the DOT, and the ALJ properly relied on the VE's testimony in its step-five analysis.

### D.  The ALJ Properly Assessed Plaintiff's Alleged Symptoms and Limitations.

Plaintiff contends that "the ALJ failed to properly assess the claimant's pain and other symptoms because she wrongfully assessed the weight of the evidence of record…ignoring evidence supporting far greater limitations than she found."  ECF No. [21] at 21.  Defendant contends that the ALJ properly considered Plaintiff's subjective symptoms.  ECF No. [23] at 15. Specifically, Defendant contends that substantial evidence supports the ALJ's finding that the intensity, persistence, and limiting effects of Plaintiff's subjective symptoms were not entirely consistent with the medical evidence.  *Id.*  For the reasons stated below, the undersigned finds that the ALJ's finding as to Plaintiff's subjective complaints were supported by substantial evidence.

The Eleventh Circuit "has established a three-part pain standard that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (internal quotation omitted).  Specifically, the Eleventh Circuit's standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from

that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.* (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  If a claimant established the existence of an underlying medical condition and that condition could reasonably be expected to produce the alleged symptoms, but the objective medical evidence does not confirm the severity of those symptoms, the ALJ must evaluate their intensity, persistence, and effect on the claimant's ability to work.  *See Kunce v. Berryhill*, No. 16-23972-CIV, 2017 U.S. Dist. LEXIS 138821, at *45 (S.D. Fla. Aug. 24, 2017); *see also* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(c)–(d).

Additionally, in considering the intensity, persistence, and limiting effects of the alleged pain, the ALJ considers whether there are any inconsistencies between the plaintiff's statements, the medical record, and other evidence of record.  20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *see also* SSR 16-3p, 81 Fed. Reg. 14166, 14167 (March 9, 2016).  "If a claimant testifies as to his subjective complaints of disabling pain and other symptoms . . . the ALJ must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms."  *Dyer*, 395 F.3d at 1210–11 (citing *Foote*, 67 F.3d at 1562) (internal quotations omitted).  "Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."  *Wilson*, 284 F.3d at 1225 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)).  "The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the district court or this Court to conclude that the ALJ considered her medical condition as a whole."  *Dyer*, 395 F.3d at 1210–11 (internal quotations omitted) (citing *Foote*, 67 F.3d at 1561).

Here, the ALJ determined that Plaintiff had medically determinable impairments, including spine disorders, unspecified arthropathies, disorders of muscle, ligament, and fascia, and lumbar post-laminectomy syndrome.  R. at 29.  Further, the ALJ also noted that such impairments "could reasonably be expected to cause the alleged symptoms."  *Id.* at 34.  Nevertheless, the ALJ concluded that Plaintiff's subjective allegations regarding the intensity, persistence and limiting effects of Plaintiff's claimed symptoms "are not entirely consistent with the medical evidence and other evidence in the record. . . ."  *Id.*  Indeed, the ALJ reasoned that Plaintiff's "longitudinal medical history is inconsistent with his allegations of disability" because "[t]he consistency of the claimant's allegations . . . in comparison to the objective evidence, is diminished because those allegations are greater than expected in light of the objective evidence of record."  *Id.* at 32.  The ALJ supported her decision by citing to the objective medical evidence in the record.  R. at 32–33, 607–09, 725–26, 915–18, 937, 960–61, 974–77; [13-1] at 125, 138, 155, 325, 347–57, 373–75, 452, 460.  Indeed, although Plaintiff testified that his worst physical limitations stemmed from the pain in his hands and back, R. at 62, the ALJ considered multiple examinations, including physical examinations that (1) showed normal inspection of Plaintiff's back, *id.* at 32, 725, (2) showed Plaintiff's back and lower extremities were normal, with ability to ambulate with a normal range of motion, *id.* at 32, 958, and (3) showed no evidence of inflammatory or deforming arthritis in the hands, *id.* at 33, 961.  Moreover, the ALJ also considered Plaintiff's other allegations of pain, including pain to his abdomen, lumbar, chest, and neck.  *Id.* at 32–33.  Concerning Plaintiff's abdominal pain, the ALJ noted that, although an upper endoscopy showed mild gastritis, Plaintiff was put on medication, slowly improved, and was ultimately discharged.  *Id.* at 33; ECF No. [13-1] at 138.  Concerning Plaintiff's lumbar, the ALJ noted that Plaintiff received two rounds of spinal injections and, thereafter, on examination, Plaintiff displayed full range of motion of the lower

back and was even able to get on and off the examining table without difficulty. R. at 32, 960–61; ECF No. [13-1] at 325–27. Finally, concerning Plaintiff's chest and neck pain, the ALJ noted that, despite Plaintiff's complaints, Plaintiff's physical examination was normal, his heart rate, rhythm and sound were normal, and examinations of his extremities were normal. R. at 32, 915–18.

In sum, the ALJ properly considered Plaintiff's subjective symptoms. As Defendant correctly notes, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision." *Dyer*, 395 F.3d at 1211. Indeed, even if Plaintiff could point to additional evidence that would weigh against the ALJ's decision, that, alone, would not provide a sufficient basis for this Court to disturb the ALJ's decision as to this issue. Even if the Court finds that the evidence preponderates against Commissioner's decision, the Court must affirm Commissioner's decision if the decision is supported by substantial evidence. *See Ellison*, 355 F.3d at 1275. As such, the undersigned finds that the ALJ properly discounted Plaintiff's subjective complaints, and, in light of the objective medical evidence of record, the ALJ's decision was supported by substantial evidence.

## IV.   RECOMMENDATION

In accordance with the foregoing Report and Recommendation, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion be **GRANTED in part and DENIED in part**, Defendant's Motion be **DENIED**, and this matter be **REMANDED** back to the ALJ with instructions that the ALJ properly evaluate and consider the medical opinions of Dr. Tejeiro.

## V.   OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.

Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

    **DONE AND SUBMITTED** in Chambers at Miami, Florida, this 18th day of January, 2021.

_____

**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**